UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT PAUL HEIDEL, JR.                         CIVIL ACTION

VERSUS                                          NO. 14-176

ORLEANS PARISH PRISON ET AL.                    SECTION "N" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Robert Paul Heidel, Jr., is a prisoner incarcerated in the Orleans Parish Prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, the Sheriff's Office and the Orleans Parish Prison, alleging that he received inadequate medical treatment for head injuries after he was attacked by another inmate. He seeks monetary damages. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On March 20, 2014, I conducted a telephone conference in this matter. Participating were plaintiff pro se; and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Heidel testified that he has been incarcerated in OPP since April 14, 2013, as a pretrial detainee awaiting trial on an aggravated battery charge. He said his next court appearance in his criminal proceedings is scheduled for April 3, 2014. Although his

written submissions refer to an incident that allegedly occurred in OPP in October 2013, he clarified during the course of his testimony that the incident upon which his claim is based in this case actually occurred on November 11, 2013.

Plaintiff stated that on that date, he was walking in the area of the tier in which he was housed where the inmates' beds are located. He stated that another inmate had tied a string between the beds for some unclear reason and that Heidel did not see the string. Heidel said that while walking he "accidentally" hit the string and broke it. He explained that the other inmate, who was a much bigger man but whose name Heidel could not recall, "got mad," picked him up and "slammed" Heidel to the floor.

Plaintiff testified that he was stunned and "frozen" laying on the floor and that "I couldn't even move." He stated that "moments after," an OPP correctional officer, whose name he did not know, came into the tier, and Heidel heard the officer ask if he was all right. Plaintiff stated that another inmate in the area answered "yes," so the correctional officer immediately turned away, "walked out and just left me there." Heidel stated that he saw the correctional officer's feet "come right up to my face almost." Heidel said that he was conscious, but he remained on the floor and "couldn't move."

Heidel testified that the correctional officer must have seen the incident on a surveillance camera from the security booth where the officer was stationed outside the

tier, which must have prompted the officer to check on the situation.  He estimated that

it took a minute or so after the incident for the correctional officer to come into the tier

and check on him.  Heidel said that his complaint in this case is that the correctional

officer did not immediately summon medical assistance or take Heidel to the nearby

nurses station.

Heidel said that he had a "hickey" or lump on his head and a severe headache and

unsteadiness as a result of the incident.  He testified that he stayed on the floor, unable

to move, for about eight or ten minutes before two other inmates helped him up and

moved him to a table where he was able to sit and rub his head.  He stated that it then

took somewhere between two and three hours before he was able to summon someone

to take him to the nearby nurses station.

Plaintiff testified that the nurses station was only about a two-minute walk from

the tier area where he was being housed in the OPP "TDC" (temporary detention center),

which he described as a converted "warehouse" where some inmates were then being

held.  He complained that the nurse did very little for him at the nurses station, where he

stayed for about 30 minutes before he was transferred to the OPP "medical tier," where

Heidel said he stayed for about one and one-half months thereafter.

Heidel confirmed during his testimony that he had received and reviewed the OPP

medical records that I previously ordered defendants to produce, Record Doc. Nos. 6 and

3

17, and he stated that they are "pretty much" accurate.  He confirmed the notations in the medical records contained in four documents dated November 11, 2013, including one entitled "Nurse Notes" made at 2:03 p.m., two separate forms entitled "Provider Note/Orders" and a third document entitled "Medication Administration Record." Although Heidel alleged that he did not receive sufficient care or "observation" and was simply left in the OPP medical tier largely unattended, the medical records indicate that when he was first examined by the nurse, who Heidel said made him move his eyes to the left and right, she noted a reddening lump or knot on the left side of his head and that Heidel complained of headache, nausea and "dizziness off and on," but he denied that he had lost consciousness.  The records further note that the nurse received "telephone orders" from Dr. Gore to provide Heidel with Tylenol 500 for three days, which he alleged he never received, and an ice pack for his head, which he said he did receive, and to transfer him to the OPP medical tier for neurological testing to determine if he had a concussion.

In his testimony, Heidel also confirmed that during his six-week stay in the OPP medical tier, he was seen by Dr. Gore, who checked Heidel for a concussion. After noting Heidel's complaints, including headaches, dizziness and lightheadedness, the medical records indicate that no evidence of swelling, hematoma, bruising, loss of consciousness, concussion or neurological deficit was found.  Heidel testified that he was also treated

on the medical tier for preexisting back and sinus problems by Dr. DiLeo and was given anti-inflammatory Naproxen or Naprosyn, acetaminophen and other medications for unrelated HIV and psychosis conditions, which he continues to receive and is still taking while in OPP.

Heidel testified that he left the OPP medical tier after about six weeks, some time in January 2014, and was returned to the OPP general population.  He also alleged that defendants should possess a video of the incident in which he was slammed to the floor by the other inmate, and he clarified that the incident had occurred during the morning hours.

## **ANALYSIS**

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d

6

318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[1]

## II. MEDICAL CARE

Heidel was a pretrial detainee at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The

inquiry was "whether the denial of medical care . . . was objectively reasonable in light

of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a

claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he

demonstrates that there has been "deliberate indifference to serious medical needs" by

prison officials or other state actors.  Only deliberate indifference, "an unnecessary and

wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes

conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia,

428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate

indifference" means that a prison official is liable "only if he knows that the inmates face

a substantial risk of serious harm and [he] disregards that risk by failing to take

reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The

Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has

violated the Eighth Amendment.  If the court finds that one of the components of the test

is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the

deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor

11

> disregarded a known or obvious consequence of his action.  <u>Board of the</u>
> <u>County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S.
> 397, 117 S. Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of</u>

<u>County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770.  "'Subjective recklessness,'" as used

in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton v.</u>

<u>Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish

that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See</u>

<u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with

immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the

"deliberate indifference" standard applies, and Heidel must allege facts sufficient to

establish that defendants knew he faced a substantial risk of serious harm and disregarded

that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly

fails to allege facts sufficient to satisfy any of the essential elements of his claim,

including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the injuries Heidel described resulting from

the incident, in which another inmate suddenly and without warning slammed him to the

floor, including a bump on his head and headaches, constituted a serious medical need that posed a substantial risk of harm in Heidel's particular circumstances. As Heidel conceded during his testimony, he did not lose consciousness and he did not suffer a concussion. Thus, no "life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes occurred in this case. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

Even assuming, however, without concluding, that plaintiff's conditions presented serious medical need for constitutional purposes, Heidel has alleged facts, confirmed by his testimony and the verified medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Heidel testified that the OPP correctional officer responded to the incident almost immediately, failing to render immediate medical care.  Even assuming that the officer

left the scene, Heidel testified that it was only after another inmate told the officer that Heidel was okay. While this may have been mistaken, even negligent, it cannot be characterized as deliberately indifferent.

In addition, Heidel's testimony and the medical records confirm that, while in OPP, he was taken to the nurses station.

Although Heidel experienced delay of about two or three hours in his treatment and expresses dissatisfaction with the type and quality of his case, his conditions were monitored and addressed by medical personnel.  He was checked for concussion symptoms and found to have none.  He was prescribed Tylenol and given an ice pack for his headache.  He was quickly transferred from the nurses station to the OPP medical tier, where he stayed for six weeks, for observation and where he was examined by Dr. Gore.  Thus, this record in no way supports an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed.

Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Heidel has alleged initial delay of two or three hours in receiving medical care in that he did not receive the treatment he thought necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  The decisions made by the treating medical providers concerning when and how to render the care that they gave were classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the continuing and six-week medical attention Heidel received for his injuries relating to the subject incident.

Contentions like Heidel's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not

constitute deliberate indifference, even if treatment was negligently administered); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Corte v. Schaffer, 24 F.3d. 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that any OPP personnel were deliberately indifferent to his serious medical needs rising to the level of a violation of his constitutional rights. For all of the foregoing reasons,

plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   SHERIFF NOT PERSONALLY RESPONSIBLE

Heidel has named Sheriff Gusman as a defendant in this case.  However, plaintiff makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test

cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.  Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Heidel must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate

19

indifference." <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Heidel must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." <u>Payne v. Pickett</u>, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, plaintiff states no cognizable Section 1983 cause of action against the sheriff, and all claims against him must be dismissed as legally frivolous.

## IV.   <u>NON-SUABLE ENTITIES</u>

Heidel has named the Sheriff's Office and Orleans Parish Prison as defendants in this matter.  However, neither the Sheriff's Office nor Orleans Parish Prison are legal entities capable of being sued.  <u>Martin v. Davis</u>, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (Berrigan, C.J.) (citing  La. Rev. Stat. § 33:361; <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); <u>Manley v. State</u>, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); <u>Norwood v. City of Hammond</u>, No. 99-879, 1999 WL 777713, at *3 (E.D. La. 1999); <u>Boudreaux v. Bourgeois</u>, No. 98-3809,

1999 WL 804080, at *3 (E.D. La. 1999); <u>Dugas v. City of Breaux Bridge</u>, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); <u>accord</u> <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).   The State of Louisiana grants no such legal status to any law enforcement office or department.  <u>Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't</u>, 350 So. 2d 236 (La. App. 3d Cir. 1977). The Sheriff's Office is not a "person" for purposes of Section 1983 liability.

In addition, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term.  <u>Cage v. Kent County Corr. Facility</u>, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); <u>Johnson v. LCDC Med. Staff</u>, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); <u>Holifield v. Mobile County Sheriff's Dep't</u>, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); <u>Cullen v. DuPage County</u>, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Corr. Facility Admin.</u>, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); <u>Sponsler v. Berks County Prison</u>, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993). Thus, Heidel can assert no claim against the Sheriff's Office or Orleans Parish Prison under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____26th_____ day of March, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

22